UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

TOWAKI KOMATSU,

    Defendant.
---------------------------------------------------------X

**MEMORANDUM & ORDER**

18-cr-651 (ST)

**TISCIONE, United States Magistrate Judge:**

Defendant Towaki Komatsu is charged with violating provisions of 41 C.F.R. § 102-74.390, a Department of Homeland Security ("DHS") regulation that imposes a fine or up to thirty days imprisonment for creating disturbances on United States federal property. Defendant seeks dismissal of the information, arguing that the regulation is (1) unconstitutionally overbroad, (2) unconstitutionally vague, and (3) the result of unconstitutional delegation of legislative authority to DHS. In the alternative, Defendant requests that the Government issue a bill of particulars and requests that the Court hold a jury trial.

For the reasons discussed herein, the Court DENIES Defendant's Motion to Dismiss. The Court also DENIES Defendant's requests for a bill of particulars and a jury trial.

## BACKGROUND

This case arises from an incident involving Defendant and a Court Security Officer ("CSO") at the Daniel Patrick Moynihan United States Courthouse in New York, New York. According to the Government's Complaint, ECF No. 1-1:

> On or about August 8, 2018, TOWAKI KOMATSU, the defendant, saw CSO-1 in plainclothes outside the elevator bank at the Daniel Patrick Moynihan United States Courthouse at 500 Pearl Street, New York, New York. CSO-1 was on his way to the locker room at the courthouse to change into his uniform and start his shift. Upon seeing CSO-1, KOMATSU told him, "fuck you, faggot." CSO-1 responded "fuck you." TOWAKI KOMATSU, the defendant, then charged at CSO-1 with a

black pen in his hand. CSO-1 caught KOMATSU's raised arm and subdued KOMATSU.

*Id.* ¶ 5(b)-(c). In its original Information, ECF No. 1-2, the Government charged Defendant with assault of a federal employee pursuant to 18 U.S.C. § 111(a)(1).[1] Ultimately, the Government filed the operative Second Superseding Information, ECF No. 3, alleging:

> On or about August 8, 2018, in the Southern District of New York, TOWAKI KOMATSU, the defendant, having entered in and on Federal property, loitered, exhibited disorderly conduct, and exhibited other conduct that created loud and unusual noise and a nuisance, and otherwise impeded and disrupted the performance of officials duties by Government employees, to wit, in the Daniel Patrick Moynihan United States Courthouse at 500 Pearl Street, New York, New York, KOMATSU forcibly assaulted a Court Security Officer assigned to the United States District Court for the Southern District of New York.
> (Title 41, Code of Federal Regulations, Sections 102-74.390(a) and (c).)

*Id*. As noted, Defendant moved to dismiss the Second Superseding Information on constitutional grounds, requesting a bill of particulars and a jury trial in the alternative. Motion to Dismiss ("Mot. to Dismiss"), ECF No. 8. The Government filed an Opposition ("Opp'n"), ECF No. 9, and Defendant filed a Reply, ECF No. 10.

Pursuant to Federal Rule of Criminal Procedure 21, this case was transferred to the Court from the Southern District of New York by the Honorable James L. Cott, United States Magistrate Judge. Order of Transfer, ECF No. 1-3.[2] The Court heard oral argument on the Motion to Dismiss at the Status Conference held on April 10, 2019. Taking into account the parties' briefing and oral argument, the Court discusses Defendant's Motion to Dismiss herein.

---

[1] The Government also filed but has now dropped a charge related to a separate confrontation with a CSO that took place on July 9, 2018.

[2] Judge Cott found that transfer to this Court was in the interest of justice, ostensibly to avoid any "appearance of partiality" arising from the disposition of the case by a judge sitting in a courthouse that the alleged victim is tasked with protecting. *See United States v. Komatsu*, No. 18-CR-671 (JLC), Order, ECF No. 28 (S.D.N.Y. Nov. 7, 2018).

## DISCUSSION

The regulation which the Government charges Defendant with violating reads, in full:

**What is the policy concerning disturbances?**

All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that –

(a) Creates loud or unusual noise or a nuisance;
(b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
(c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

41 C.F.R. § 102-74.390. The Government cites subsections (a) and (c) of the regulation in its Second Superseding Information, but also charges Defendant with loitering and exhibiting disorderly conduct, apparently referencing the regulation's main text.

Congress delegated the authority to issue the regulations contained in Title 41 Subpart C via 40 U.S.C. § 1315, which reads in relevant part:

> (1) In general.-- The Secretary [of Homeland Security], in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.
>
> (2) Penalties.-- A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both.

*Id*. The stated purpose of this statute is to empower DHS to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property." 40 U.S.C. § 1315(a).

The Court turns to Defendant's various challenges to the constitutionality of 41 C.F.R. § 102-74.390 below.

*Overbreadth Claim*

Defendant first challenges 41 C.F.R. § 102-74.390 as facially overbroad in violation of the First Amendment. "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The First Amendment doctrine of overbreadth provides that a law is unconstitutionally overbroad if it punishes a substantial amount of constitutionally protected speech "judged in relation to the statute's plainly legitimate sweep." *See Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Thus, "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

Additionally, a law is not facially overbroad "when a limiting construction . . . would confine the statute to permissible applications." *Broadrick*, 413 U.S. at 615; *see also Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975) ("[T]he Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction."). Moreover, the canon of constitutional avoidance provides that if one interpretation of a law risks rendering the law unconstitutional, but a "fairly possible" alternative interpretation of the law does not, courts will adhere to the alternative interpretation rather than strike down the law. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001) (citing *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). As such,

the Supreme Court has described invalidation of a law on overbreadth grounds as "strong medicine" that is to be applied "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.

The Court finds that 41 C.F.R. § 102-74.390 is not unconstitutionally overbroad. Stripped of context, the regulation could arguably be read to criminalize some First Amendment-protected activity. *See* Mot. to Dismiss 6-7 (listing examples of protected activities that could conceivably be characterized as "nuisance," "loitering," or "loud or unusual noise[s]"). However, an appropriate limiting construction is available: the prohibited conduct must hamper federal employees' ability to carry out their duties. Subsection (c) of the regulation strongly suggests this limiting construction, prohibiting conduct that "*otherwise* impedes or disrupts the performance of official duties by Government employees." 41 C.F.R. § 102-74.390(c) (emphasis added). The use of the word "otherwise" at the end of the list of prohibited conduct indicates that the other kinds of conduct in the list also impede or disrupt the work of federal employees. In *United States v. Agront*, 773 F.3d 192 (9th Cir. 2014), the Ninth Circuit applied a similar limiting construction to a highly similar regulation promulgated by the Department of Veterans Affairs ("VA"). The catchall provision of the regulation in *Agront* likewise prohibited conduct "which *otherwise impedes or disrupts* the performance of official duties by Government employees." *Id.*, 773 F.3d at 198 (quoting 38 C.F.R. § 1.218(a)(5)) (emphasis in original). The court held that the "[u]se of the term 'otherwise' indicates that, in order to be prohibited conduct, 'loud and unusual noise' also would need to rise to the level of impeding or disrupting normal VA operations." *Id.* (citation omitted).

In this Court's reading, § 102-74.390(c) modifies not only "other conduct on [federal] property," but the regulation's prohibition of "loitering" and "exhibiting disorderly conduct" as well. Like the use of the word "otherwise" in subsection (c), the use of the word "other" in the

phrase "other conduct on [federal] property" suggests that the preceding conduct in the main text must also be of such a nature that it impedes or disrupts government employees' performance of their official duties. This is at least a "fairly possible" interpretation of the regulation, which is sufficient to save it from being unconstitutionally overbroad. *See St. Cyr*, 533 U.S. at 300; *United States v. Lawrence* ("*Lawrence*"), No. 17-CV-97 (MMD), 2018 WL 934858, at *4 (D. Nev. Feb. 16, 2018) (finding this interpretation of the regulation to be "fairly possible"); *but see United States v. Marotz*, 75 F. Supp. 3d 1167, 1170-71 (N.D. Cal. 2014) (finding, without contest from defendant, that subsection (c) did not limit the prohibition on "loud or unusual noise[s]" in subsection (a)).

As further evidence that 41 C.F.R. § 102-74.390 is not unconstitutionally overbroad, "[t]he other regulations in § 102-74, particularly subpart C, 'identify a core of conduct that may constitutionally be controlled on federal property in order to preserve the normal functioning of federal facilities.'" *United States v. Zagorovskaya*, No. 13-CR-583 (PA), 2014 WL 12665158, at *7 (C.D. Cal. Oct. 8, 2014) (quoting *United States v. Stansell*, 847 F.2d 609, 614-15 (9th Cir. 1988), *aff'd by* 628 F. App'x 503 (9th Cir. 2015); *see also United States v. Cassiagnol*, 420 F.2d 868, 873-74 (4th Cir. 1970) (upholding predecessor regulation on this basis). Other regulations that suggest this core of conduct include 41 C.F.R. § 102-74.370, which provides that federal employees may inspect packages or baggage being brought onto the property; 41 C.F.R. § 102-74.385, which requires that persons on federal property must comply with lawful directions by federal officials; and 41 C.F.R. § 102-74.425, which proscribes bringing certain animals onto federal property. Additionally, the language of the authorizing statute, 40 U.S.C. § 1315, provides further support for this limiting construction. Regulations issued pursuant to the statute must be

"necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property." *Id.* § 1315(c)(1).

As such, the authorizing statute and the other regulations in § 102-74 further support the application of a limiting construction requiring the conduct proscribed under the challenged regulation to be that which impedes or disrupts the performance of official duties by government employees. Construed with this limiting construction, 41 C.F.R. § 102-74.390 and subsections (a) and (c) cannot be said to prohibit a substantial amount of constitutionally protected speech judged in relation to its plainly legitimate sweep. *See Zagorovskaya*, 2014 WL 12665158, at *7 (citing *Broadrick*, 413 U.S. at 615). The regulation is thus not facially overbroad.

Nor is the regulation overbroad as applied to Defendant's conduct. Defendant allegedly said "fuck you, faggot" to a plainclothes CSO and charged at him with a pen. The former conduct, by itself, is likely protected, but the latter certainly is not. Defendant argues that the Government is no longer relying on the latter conduct to prove its case because it reduced the charge from statutory assault to violation of 41 C.F.R. § 102-74.390. Mot. to Dismiss 8. But the Government denies abandoning these allegations, noting that they are still referenced in the Complaint and the "to wit" clause of the Second Superseding Information. Opp'n 9. Defendant also argues that "[t]here is no claim that [his] actions disrupted any court proceedings, disturbed the business of others in court that day, or interfered with the (then off-duty) officer's performance of some lawful duty." Mot. to Dismiss 8. This is not grounds for an as-applied constitutional challenge, but rather a factual question for trial. *See United States v. Brice*, 926 F.2d 925, 930 (9th Cir. 1991) ("If a defendant believes he was not impeding the official duties of a government employee, he can raise as a defense that his conduct did not impede or disrupt.").

*Vagueness Claim*

The Due Process clause of the Fifth Amendment requires that a criminal statute or regulation must, at a minimum, "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits in a manner that does not encourage arbitrary and discriminatory enforcement." U.S. Const. amend. V; *Hill V. Colorado*, 530 U.S. 703, 732 (2000). "Facial vagueness challenges may go forward only if the challenged regulation 'reaches a substantial amount of constitutionally protected conduct.'" *Farrell v. Burke*, 449 F.3d 470, 496 (2d Cir. 2006) (quoting *Kolender v. Lawson,* 461 U.S. at 358 n.8 (1983)).

The Court joins several others in finding that 41 C.F.R. § 102-74.390 is not unconstitutionally vague on its face. *See United States v. Cruscial*, No. 18-CR-465 (JR), 2019 WL 1087150, at *4 (D. Or. Mar. 7, 2019); *Lawrence*, 2018 WL 934858, at *4; *United States v. Mumford*, No. 17-CR-8 (JCC), 2017 WL 652449, at *4 (D. Or. Feb. 16, 2017); *United States v. Baldwin*, No. 11-CR-18 (PAB), 2013 WL 1751888, at *3 (D. Colo. Apr. 23, 2013), *aff'd*, 745 F.3d 1027 (10th Cir. 2014); *United States v. Strong*, No. 11-PO-2 (JRM), 2011 WL 4072856, at *2-3 (D. Me. Sept. 12, 2011), *aff'd*, 724 F.3d 51 (1st Cir. 2013); *Brice*, 926 F.2d at 930 (predecessor regulation 41 C.F.R. § 101-20.305 was not unconstitutionally vague). Given the appropriate limiting construction that the conduct prohibited by the regulation must impede or disrupt the performance of official duties by government employees, the regulation does not reach a substantial amount of constitutionally protected conduct. *See Cruscial*, 2019 WL 1087150, at *4. "Moreover, the Court finds no basis to conclude that any subsection is written in a manner that encourages arbitrary and discriminatory enforcement." *Baldwin*, 2013 WL 1751888, at *3 (internal quotation marks, alterations, and citation omitted).

Defendant's as-applied vagueness challenge also fails. A person of ordinary intelligence would understand that Defendant's alleged conduct falls under "disorderly conduct" and "nuisance," at least. *Compare Lawrence*, 2018 WL 934858, at *5 ("It would have been clear to any reasonable person that threatening a [government] employee constitutes disorderly conduct . . . ."), *with* Compl. ¶ 5(c) (alleging that Defendant attempted to assault a government employee with a pen).

<u>Nondelegation Claim</u>

Defendant's third claim is that the promulgation of the regulation is itself the result of an unconstitutional delegation of congressional authority to DHS, rendering the regulation void. Mot. to Dismiss 10-19.

"A delegation is constitutionally sufficient if Congress clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority. In other words, Congress needs to provide the delegated authority's recipient an intelligible principle to guide it." *United States v. Guzman*, 591 F.3d 83, 92–93 (2d Cir. 2010), *as amended* (Jan. 8, 2010) (internal quotation marks and citations omitted).

Defendant first argues that Congress can never delegate the authority to define criminal conduct and impose criminal penalties to the Executive. Mot. to Dismiss 14-15. This argument is clearly foreclosed by Supreme Court decisions which have upheld congressional delegations of authority to promulgate regulations that impose criminal sanctions. *See, e.g.*, *Touby v. United States* ("*Touby*"), 500 U.S. 160, 165–66 (1991).

Defendant also suggests that even if Congress may delegate the authority to define criminal conduct and impose criminal penalties to the Executive, it can only do so by providing more "fulsome statutory guidance" than that which is required to satisfy the "intelligible principle" test.

Mot. to Dismiss 18-19. In *Touby*, the Supreme Court suggested that a higher standard *may* apply to Congressional delegations of authority in the criminal context. 500 U.S. at 166. However, it declined to articulate such a standard, holding that whatever hypothetical higher standard may apply, it was met by the delegation of authority contained in the statute at issue. *Id*. To date, neither the Supreme Court nor the Second Circuit has announced a nondelegation standard other than the "intelligible principle" standard. The Court will thus apply the intelligible principal standard to the delegation of authority here.

Congress has clearly provided an intelligible principle to the Executive through 40 U.S.C. § 1315. First, the general policy provided by the statute is "the protection and administration of property owned or occupied by the Federal Government." *Id.* § 1315(c)(1). This general policy is at least as definite as those in statutes previously upheld by the Supreme Court over nondelegation challenges. *See, e.g.*, *Touby*, 500 U.S. at 165 (general policy of preventing "imminent hazard to the public safety"); *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216 (1943) ("public interest, convenience, or necessity"). Second, the statute expressly delegates authority to the Secretary of Homeland Security. *See* 40 U.S.C. §§ 1315(a), (c)(1). Finally, in addition to restricting the application of the regulations to federal property, the statute sets boundaries on the delegated authority by restricting the penalties imposed by regulation to a fine, imprisonment for not more than 30 days, or both. *Id.* § 1315(c)(2).

As such, under applicable nondelegation precedent, the statute provides an intelligible principle. The Court joins the others that have held that the authority to issue 41 C.F.R. § 102-74.390 was properly delegated to DHS by Congress. *See Cruscial*, 2019 WL 1087150, at *2-3; *Mumford*, 2017 WL 652449, at *3-4; *see also Cassiagnol*, 420 F.2d at 876 (upholding predecessor regulation over nondelegation challenge).

Having rejected Defendant's overbreadth, vagueness, and nondelegation challenges to the charging regulation, the Court denies Defendant's Motion to Dismiss the Second Superseding Information.

*Bill of Particulars*

As an alternative to dismissal, Defendant requests that the Court require the Government to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Mot. to Dismiss 19-21. The purpose of a bill of particulars is to provide sufficient information about the nature of charges against a defendant to enable him or her to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Id.* (quoting *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, such as through discovery or in the criminal complaint, no bill of particulars is required. *Id.* (citations omitted).

The Court declines to direct the Government to issue a bill of particulars. This is not a complex matter. The charged conduct involves a single incident on a single day, as described in the Complaint and in the Second Superseding Information. The Government contends that Defendant received discovery regarding the incident, Opp'n 20, and Defendant does not dispute as much in his Reply. It is not unfair to require Defendant to defend his conduct against prosecution under the few provisions of 41 C.F.R. § 102-74.390 referenced in the Second Superseding Information. *See United States v. Zemlyansky*, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013) ("It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence of legal theory.") (citation omitted).

*Jury Trial*

Lastly, Defendant, in his Motion to Dismiss originally filed when this case was before the Southern District of New York, requests a jury trial to "safeguard these proceedings against partiality and the appearance of partiality." Mot. to Dismiss 23. As Defendant concedes, *id.* at 21, a jury trial is not required in this petty offense case. The Court declines to order a jury trial in its discretion. Any partiality or perceived partiality has been abrogated by the transfer of this case to the Eastern District of New York.

## CONCLUSION

For the reasons discussed herein, the Court DENIES Defendant's Motion to Dismiss the Second Superseding Information, request for a bill of particulars, and request for a jury trial.

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
      June 4, 2019